ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

STATESBORO DIVISION

| | |
|---|---|
| DEWEY E. LOVETT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 604-109 |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff appeals the decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

## I. BACKGROUND

Plaintiff applied for DIB and SSI on October 31, 2002; these applications were denied initially and upon reconsideration. Tr. ("R."), pp. 27-32, 35-38, 55-57, 269-82. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). After a hearing in which Plaintiff, who was represented by a non-attorney, testified on his own behalf, the ALJ issued

an unfavorable decision on April 30, 2004.[1] R. 287-310. The Appeals Council then denied review, making the ALJ's decision the Commissioner's final decision. R. 5-8.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's "status-post left hip replacement, right hip AVN with joint space narrowing," degenerative disk disease, and spondylosis constitute impairments or a combination of impairments considered "severe" based on the requirements in the Regulations 20 C.F.R. §§ 404.1520(c) and 416.920(b).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant is unable to perform any of his past relevant work (20 C.F.R. §§ 404.1565 and 416.965) but retains the residual functional capacity to perform a significant range of sedentary work[2] (20 C.F.R. §§ 404.1567 and 416.967). The claimant may lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; he can stand or walk for up to 2 hours in a 8 hour workday. He cannot engage in more than limited pushing or pulling with his right lower extremity. He is precluded from climbing ropes, ladders, or scaffolds; crawling; or kneeling. He is occasionally limited in his ability to stoop, balance, or reach overhead. He is frequently limited from exposure to hazardous moving machinery or extreme cold temperatures. He is precluded from exposure to heights, rough terrain, or vibration. Due

---

[1] The ALJ also heard testimony from a Vocational Expert ("VE"), Paul Dolon. R. 304-08.

[2] 20 C.F.R. §§ 404.1567(a) and 416.965(a) provide:

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

2

    to "perceived pain," he is frequently limited from performing jobs which require following complex or detailed instructions and completing detailed or complex tasks. Finally, the claimant is occasionally limited from working in a position of direct responsibility for other persons' safety.

  5.  Based on the claimant's age, education, and work experience, and the testimony of the VE, and using Medical-Vocational Rule 201.25 as a framework for decision-making, there are a significant number of jobs in the national economy that the claimant could perform, including: addresser (DOT # 209.587-010), ink printer (DOT # 652.685-038), surveillance system monitor (DOT # 379.367-010), and ticket seller (DOT # 211.467-030). Thus, the claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

R. 19-20.

Having exhausted his administrative remedies, Plaintiff filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal of that adverse decision. Plaintiff now argues that the ALJ erred: 1) by improperly discrediting Plaintiff's pain testimony; and 2) by relying upon VE testimony which contradicts the Dictionary of Occupational Titles ("DOT"). See generally Pl.'s Br.

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the

Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

**A.     Plaintiff's Pain Testimony**

The Court agrees with Plaintiff regarding both his allegations of error. First, the Court agrees that the ALJ failed to properly assess Plaintiff's pain testimony. Although the ALJ noted that Plaintiff's allegations of disabling pain were "generally consistent with the evidence of record," he found that they were nonetheless "excessive" given Plaintiff's medications and "treating physician's directions." R. 17. In explaining this finding, the ALJ noted: 1) Plaintiff used a cane despite the fact that no medical care provider had ever prescribed the use of a cane; 2) on May 23, 2003, Dr. Paul J. Hermzurm, Plaintiff's orthopaedist, reported that Plaintiff was walking with only a "slight Trendelenburg gait;" 3) on August 22, 2003, Plaintiff reported that he was "doing very well in regards to his left hip;" and 4) X-rays taken on February 20, 2004, showed no collapse of the femoral head of the right hip. Id. The ALJ also noted that a "treating source statement in the file . . . indicates that the claimant may perform some light duty-type work." R. 16 (citing 256-64).[3]

The Eleventh Circuit has established a three-pronged test for evaluating a claimant's complaints of pain and other subjective symptoms. See Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (*per curiam*). Under the Eleventh Circuit's pain standard, Plaintiff must show:  (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged pain or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can

---

[3]Rather than citing the treating source statement, the ALJ cited an agency medical consultant's reference to "a treating source statement in the file." R. 256. Apparently, the ALJ (and the agency consultant) were referring to a statement in Dr. Clinton E. Massey's October 2002 treatment notes, discussed *infra*.

5

reasonably be expected to give rise to the claimed pain or restriction. Id. When discrediting a claimant's subjective allegations of disabling pain, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (*per curiam*).

Bearing the Holt pain standard in mind, the Court is not persuaded that the ALJ's decision to discredit Plaintiff's pain is adequately supported. First, the ALJ's reliance upon the absence of a prescription for a cane, while superficially attractive, is seriously flawed. It is true that on November 5, 2002, Dr. Clinton E. Massey, Plaintiff's treating physician, opined that Plaintiff did not need a cane or walker; his treatment note also indicates Plaintiff's physical therapist's concern that Plaintiff "was working the system." R. 165. However, this information is of dubious value in assessing Plaintiff's present condition. At the time Dr. Massey opined that Plaintiff did not need a cane or walker, Plaintiff was not a yet a surgical candidate. See R. 168, 169. Of note, on October 29, 2002, Dr. Massey suggested Plaintiff could perform "lighter work." R. 168.

In contrast, by January 2003, Dr. Massey had referred Plaintiff to Dr. Herzwurm, who diagnosed Plaintiff with "State III avascular necoris with collapse of . . . [the] femoral heard." R. 183. Total left hip arthroplasty was performed on February 3, 2003. R. 180. Although the surgery on his left hip was very helpful, Plaintiff's doctors noted that he still needed a walker to ambulate on March 14, 2003. R. 252. There is no mention at this time that Plaintiff's use of the walker was unnecessary or inappropriate. See id. By August 2003, Plaintiff was experiencing great difficulty with his right hip. R. 266. X-rays revealed that

Plaintiff was developing avascular necrosis in his right hip. R. 266. Celebrex was prescribed for pain and inflammation. Id. By February 2004, Plaintiff's right hip had continued to worsen, although there was "no collapse of the femoral head at [that time]." R. 268. Plaintiff was prescribed Mobic, another drug used to relieve inflammation and pain. Id. At the April 1, 2004, hearing, Plaintiff testified that he still took Mobic along with over-the-counter pain medicines, but to little effect. R. 298. Plaintiff also testified that Dr. Herzwurm had recently recommended surgery on Plaintiff's right hip. R. 302.

Based on the above, it is clear that Dr. Massey's conclusions that Plaintiff could perform "lighter work" and that he did not need a cane predate significant changes in Plaintiff's condition. Thus, the ALJ's reliance upon this evidence was questionable. Indeed, the ALJ found that Plaintiff had the residual functional capacity for only *sedentary* work, demonstrating that the ALJ himself determined that he could not rely on Dr. Massey's 2002 opinion. R. 12-21. The ALJ's reliance upon Dr. Herzwurm's May 2003 observations was similarly flawed, as these observations also predate degenerative changes in Plaintiff's right hip.

In addition, the ALJ's reliance upon Plaintiff's "medications" is curious. The ALJ's opinion does not address Plaintiff's recent prescriptions for Mobic and Celebrex or explain how these prescriptions impact the credibility of Plaintiff's pain testimony. At bottom, the ALJ's credibility finding relies upon his conclusion that Plaintiff's right hip could not be the source of disabling pain because the femoral head had not yet collapsed. R. 17. Unfortunately, the ALJ provides no supporting rationale for this conclusion. Nor does the ALJ's opinion describe the Holt pain standard or apply it explicitly. In sum, it is unclear

upon what basis the ALJ concluded that Plaintiff's claims regarding his right hip pain were not completely credible given the recent deterioration of his condition.

In contrast, Plaintiff argues that the avascular necrosis in his right hip is a condition of such severity that it can be reasonably expected to give rise to his alleged pain. Pl.'s Br., p. 10. Plaintiff points out that the Merck Manual explains that avascular necrosis can cause "incapacitating pain . . . before any bony collapse." Id. at 9 (quoting http://www.merck.com/). In her brief, the Commissioner argues that avascular necrosis does not induce pain upon "sitting," and that Plaintiff is thus fully capable of sedentary work. Com'r's Br., p. 13. Of course, the ALJ's opinion itself does not discuss whether avascular necrosis can be reasonably expected to give rise to disabling pain absent a femoral head collapse. This is the type of debate that should be resolved at the administrative level based on competent medical evidence, not the parties' briefs before this Court. The Court cannot speculate as to whether Plaintiff's right hip constitutes an objectively determined medical condition that can reasonably be expected to give rise to Plaintiff's asserted pain when the ALJ has not addressed the issue under the applicable legal standard in the first instance. On remand, the ALJ should make explicit findings in this regard and properly evaluate Plaintiff's complaints under the Holt standard.

**B.      Conflict Between VE Testimony and the DOT**

Next, as to the ALJ's findings regarding the existence of a significant number of jobs in the national economy that the claimant could perform, the Court begins by reiterating that the ALJ concluded Plaintiff could perform a substantial range of *sedentary* jobs. See R. 18-20. The ALJ then elicited testimony from a VE, who indicated that a hypothetical individual

with the limitations listed by the ALJ could perform the following "unskilled sedentary jobs": addresser (DOT # 209.587-010), ink printer (DOT # 652.685-038), surveillance system monitor (DOT # 379.367-010), and ticket seller (DOT # 211.467-030). R. 20, 304-10. These jobs exist in Georgia and the national economy as follows: (1) addresser--516 jobs in Georgia, 19,000 nationally; (2) ink printer--200 jobs in Georgia, 7,000 nationally; (3) surveillance system monitor--400 jobs in Georgia, 20,000 nationally; and (4) ticket seller--5,000 in Georgia, 145,000 nationally.

The VE quickly qualified that the ticket seller job is classified as light exertional work under the DOT, but nevertheless indicated that he "believ[ed] it [could] be done at [the] sedentary [level]." R. 306. Unfortunately, neither the VE nor the ALJ have explained the basis for this conclusion anywhere in the record. See R. 12-21, 306. As Plaintiff notes, the VE's conclusion that ticket selling was sedentary work is admittedly in apparent conflict with the DOT, which provides that the job is classified as light work.[4] See DOT, Revised, U.S. Department of Labor, 184 (4th Ed. 1991). Plaintiff points out that the ticket seller jobs accounted for "81% of the jobs identified by the [VE]." Pl.'s Br., p. 12. Plaintiff also points out that the surveillance monitor job, accounting for another 6% of the jobs listed by the VE,

---

[4]Light work involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. . . . If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.965(b).

9

would require Plaintiff to be "continuously responsible for the safety of other people," a duty apparently precluded by the ALJ's residual capacity finding that Plaintiff's "perceived pain" would occasionally render him unable to manage such responsibility. Pl.'s Br., p. 12; R. 20. Thus, according to Plaintiff, up to 86% of the jobs identified by the VE actually exceed Plaintiff's residual functional capacity as determined by the ALJ.

In support of his argument, Plaintiff points to Social Security Ruling ("SSR") 00-4p, which requires the ALJ to "identify and obtain a reasonable explanation for any conflicts" between the DOT and VE testimony; the ALJ must then incorporate the resolution of any such conflict in his opinion. Id. at 13 (quoting SSR 00-4p). As noted, the ALJ's opinion does not explain his resolution of the apparent conflict between the DOT and the VE testimony regarding the requirements of the ticket seller job. See R. 12-21. In an attempt to save the ALJ's opinion, the Commissioner valiantly argues that the ALJ meant to explain that Plaintiff "has the capacity to perform a range of light work." Com'r's Br., p. 15. There is one problem with this argument--the ALJ's opinion does not actually say any such thing. Throughout the decision, the ALJ opined that Plaintiff had the residual functional capacity for some--but not all--*sedentary* jobs. Whatever the ALJ meant to say, his opinion plainly indicates that Plaintiff can perform sedentary work; nowhere does the ALJ provide that Plaintiff may perform light exertional level work.

The Commissioner also argues that the VE correctly indicated that the ticket seller job can be performed at the sedentary level. See Com'r's Br., pp. 15-16 (citing DOT, Revised, U.S. Department of Labor, 184 (4th Ed. 1991). Assuming *arguendo* that the Commissioner is right, this cannot save the ALJ's opinion. The ALJ failed to comply with

10

SSR 00-4p because the record does not reflect any basis for his decision to adopt the VE's conclusion that the ticket seller job can be performed at the sedentary level.[5] Neither the VE nor the ALJ made any attempt to describe the job or its requirements, much less to explain the conclusion that a significant number of ticket seller jobs constitute sedentary work which Plaintiff could perform given his limitations. As a result, the instant case must be remanded for further consideration in accordance with the Court's opinion.

### IV. CONCLUSION

For the reasons described above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** for further consideration by the Commissioner consistent with this opinion.

SO REPORTED and RECOMMENDED this 16th day of February, 2006, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] The Court is aware that in Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999), the Eleventh Circuit held "that when the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT. . . . because the DOT 'is not the sole source of admissible information concerning jobs.'" However, SSR 00-4p was not in effect at the time of the Eleventh Circuit's decision in Jones, and the Eleventh Circuit has not revisited the issue in the interim. Other courts of appeal to reach the issue have held that an ALJ's failure to comply with SSR 00-4p necessitates remand absent "other substantial evidence in the record to the ALJ's step 5 determination." Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); see also Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000)("To the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case, we agree with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so.").